# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH MALIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08 C 4393** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **HOSPIRA, INC., DEBORAH RODRIGUEZ,** | ) | |
| **JAY ANDERSON, and MICHAEL CARLIN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Plaintiff Deborah Malin filed this action against defendants Hospira, Inc., Deborah Rodriguez, Jay Anderson, and Michael Carlin, asserting claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) ("Title VII").[1]  Presently before the court is defendants' motion for summary judgment.  For the reasons that follow, defendants' motion [#81] is granted.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.  Fed. R. Civ. P. 56(c) & advisory committee notes (1963 amend.).  While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*,

---

[1] The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and 42 U.S.C. § 2000e-5(f)(3).  Venue is proper in this district under 28 U.S.C. § 1391(b).  Malin's amended complaint also alleges that her suit arises under 42 U.S.C. § 1981(a).  "[S]ection 1981 does not protect against discrimination based on sex or religion or age," *Anooya* v. *Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984), and Malin makes no claim based on national origin.  Thus, any purported § 1981 claim fails.

477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is

factually unsupported, it should be disposed of on summary judgment. *Celotex Corp.* v. *Catrett*,

477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

**BACKGROUND**[2]

Malin was hired by Abbott Laboratories ("Abbott") in April 1996 as a business analyst in

Abbott's hospital products division. Over time, she advanced in responsibilities and pay in the

division, receiving three promotions prior to 2003.

In July 2003, Malin complained to Robert Balogh, her immediate supervisor, that Satish

Shah, a next-level supervisor above Balogh, had harassed her on several occasions beginning in

2001 by asking her to lunch, to a movie, and to co-sign a personal loan.[3] According to Malin,

while she remained in Balogh's office, Balogh called Michael Carlin, a divisional vice president

for IT in Abbott's hospital products division, to discuss the matter. Although Malin admits she

could not hear what Carlin told Balogh, she testified that immediately after the call, Balogh told

Malin that Carlin had instructed Balogh to do everything in his power to stop Malin from going

---

[2] The facts in the background section are taken from the parties' Local Rule 56.1 statement of facts and construed in the light most favorable to Malin. Defendants have moved to strike numerous of Malin's additional statements of fact and responses. In accordance with its regular practice, the court has considered the parties' specific objections and responses and has included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to the resolution of this motion.

[3] Malin now also contends that Shah harassed her by telling her how long it had been since he had sex and how horny he was while leaning back in his chair and spreading his legs in her direction. Malin admitted at her deposition, however, that she did not report this conduct in 2003. (Dkt. 86 at 60 [Malin Dep. 154:6-12] ("Q. I want to make sure I understand. When you spoke with Ray White at the beginning of July 2003 when you and Bob Balogh went there, did you tell Ray White about Satish speaking to you about how long it was since he had sex and saying that he was horny? A. I don't believe so. I believe that I just gave this document."); *id.* [Malin Dep. 157:22-24] ("I didn't talk to any of my management about it, my direct management. I was afraid. I didn't want to lose my job.").)

2

to human resources with her complaints.[4]  Malin nonetheless proceeded to report the matter to

Ray White, who worked in Abbott's human resources department.

After an investigation, White concluded that Shah's conduct, although inappropriate, did

not violate Abbott's workplace anti-harassment policies.  Carlin, with White's input, provided

Shah with a counseling memorandum, which stated, among other things:

> [Y]ou are warned that you must avoid all situations which
> compromise your effectiveness as a leader in the IT organization.
> Further, to avoid any appearance of retaliation towards Debbie, her
> 2003 performance appraisal will be reviewed by me with input
> from Bob.  If there are any further substantiated incidents of this
> kind, more serious disciplinary action may result up to and
> including termination.  If any part of this warning is unclear,
> please see me immediately so I may clarify my position on this
> matter.

(Dkt. 100 at 409.)  White also encouraged Malin to come forward with any future complaints of

harassment or unfair treatment.

In May 2004, Abbott spun off its core hospital products division business to Hospira.

Malin and Carlin, among others, were transferred from Abbott to Hospira.  Carlin ultimately

became Hospira's Chief Information Officer and remained in that position through late 2009.

Since the spinoff, Malin has been a "grade 18" employee in Hospira's IT department.  An

employee's grade directly affects eligibility for bonuses, stock options, and other benefits.

Malin claims that she was passed over for several promotions or grade level increases between

2003 (while still employed by Abbott) and 2005.

In early 2005, Malin began reporting to Jay Anderson.  In January 2006, Malin met with

Anderson to discuss her grade, pay, and career direction.  Malin was informed that she would

---

[4] Balogh and Carlin each deny that this conversation occurred, and defendants argue that it is
inadmissible hearsay.  For purposes of summary judgment, the court will assume that Malin's testimony
concerning what Balogh told her is admissible.  At the very least, it may qualify as a present sense
impression.  Fed. R. Evid. 803(1).  Malin also argues that the testimony is admissible under Federal Rule
of Evidence 801(d)(2)(A) and (D).

receive a salary increase but remain at grade 18 based on decisions made after a review of all positions in the IT department. Malin expressed her dissatisfaction with these results, informing Anderson that she believed she was being held back by Carlin "as a result of retaliation, ongoing retaliation that [she] had been experiencing as a result of reporting an incident to HR." (Malin Dep. at 197:6-14.) But Malin does not recall telling Anderson, and Anderson has denied knowledge of, the details of Malin's prior complaints regarding Shah during this meeting.[5]

Anderson thereafter informed Carlin and Angela Bochek, a Hospira human resources employee, of his conversation with Malin. Bochek investigated Malin's compensation concerns and her suggestion of retaliation. Bochek learned the details surrounding Malin's 2003 complaint of sexual harassment, but she did not share these details with Anderson, who remained unaware of the basis for Malin's retaliation comments until Malin filed her EEOC charge. Bochek concluded that Malin was not undercompensated or a victim of retaliation.

In mid-June 2006, Malin experienced medical issues requiring hospitalization and surgery. She requested FMLA leave and short-term disability benefits as of June 19, 2006. Hospira granted both through August 24, 2006.[6] As of that date, Malin's short-term disability benefits ceased based on the evaluation of an independent reviewer that Malin no longer met the definition of disabled in Hospira's short-term disability plan. According to Malin, Deborah Rodriguez, who was responsible for reviewing Malin's requests for FMLA leave and short-term

---

[5] Malin argues that a trial is warranted because there are "disputed versions" of this conversation, but in light of Malin's testimony and admissions, Anderson's version is not inconsistent with Malin's and Malin has not offered any evidence to dispute Anderson's account. Additionally, Anderson's contemporaneous email in which he refers only to a "retaliation circumstance in 2002" that Malin "quickly backed away from discussing" supports the fact that Malin did not provide specifics of her 2003 complaint at that time. (*See* Dkt. 92 at 214.)

[6] Malin represents that her FMLA leave request through September 10, 2006 was initially denied. The court finds no evidence in the record supporting this; although her leave requests were extended twice and additional information was requested prior to the extension beyond August 24, Malin's medical log or other documents related to her FMLA leave do not indicate any denials.

disability benefits, told her in a threatening manner in mid-August 2006 that she had to return to work on August 25. But Hospira's records indicate, and Malin does not dispute, that her FMLA leave was extended through September 10, 2006, the maximum duration, after Malin submitted additional paperwork.

While Malin was on leave, the IT department announced a reorganization on July 12, 2006. The reorganization was the result of an ongoing process based on input from Carlin, Anderson, and outside consulting firms, among others. Although Malin was listed in June 2006 as a possible candidate for the position of manager for application development (a grade 19 position), she ultimately was given the role of relationship manager for the quality and regulatory departments. Malin's salary, grade level (18), and benefits did not change.[7] But a new, unoccupied position had been created in the reorganization between Malin and Anderson, the so-called "open box" position for a relationship management manager, a grade 20 position.[8]

Upon her return to work in September 2006, Malin expressed her dissatisfaction at not being placed in the "open box" position to Anderson, who indicated that he would speak to Carlin about the situation. Meanwhile, Malin claims to have performed many of the responsibilities of the "open box" position, and Anderson expressed approval for the job she was doing. In Malin's fourth quarter 2006 performance evaluation (dated February 2007), Malin received a 4 (out of 6) rating and praise for "[e]ffectively manag[ing] the relationship between the Quality organization and IT," "establishing relationships with the key Regulatory Senior

---

[7] Malin contends that her opportunity for advancement was affected and that she now reported to a "Level 2" manager whereas she previously was a "Level 2" manager herself.

[8] Malin speculates that she was a "logical candidate" for this "open box" position in 2006. But the record indicates that she and some other employees were ruled out for a grade 20 role by June 15, 2006, several days *before* she requested FMLA leave.

management/management that became part of the Quality organization in 2006," and "[e]ffectively managing the customer relationship," among other things. (Dkt. 101 at 427.) Identified areas of improvement included "[c]ontinu[ing] to work with the business customers to best position projects in their strategic and financial strengths" and "[c]ontinu[ing] to develop more advanced Relationship Management skills by understanding technology trends . . . and initiat[ing] strategic plans to adopt these technologies." (*Id.*)

After remaining unfilled for almost a year, the "open box" position was posted in June 2007. Malin submitted her application for the position, but Anderson never formally considered Malin or other internal candidates. Instead, he testified that he had concluded from conversations with individuals Malin worked with in connection with her 2006 performance review, in addition to his own evaluation of Malin's skills, that Malin was unsuited for the position at the time. Anil Monga, an external candidate, was hired in July 2007 for the position, which was expanded beyond the original job posting to include oversight of the research and development area as well, apparently based on Monga's superior qualifications. Anderson and Carlin were involved in making the ultimate decision.[9]

## ANALYSIS

### I.      FMLA Interference

The FMLA entitles a qualifying employee to 12 weeks of unpaid leave per year. 29 U.S.C. § 2612(a)(1). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. *Id.* § 2615(a)(1). In order to prevail on her FMLA interference claim, Malin must establish that (1) she was eligible for

---

[9] The parties dispute Carlin's role in the decisionmaking process. The record demonstrates that both Anderson and Carlin were involved in the decision not only to hire Monga but also with respect to the placement of employees in the 2006 restructuring. The court does not find it necessary to determine whether Anderson or Carlin was the "ultimate decisionmaker" in order to resolve this motion.

FMLA protection; (2) Hospira was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take FMLA leave; and (5) Hospira denied her benefits to which she was entitled. *Righi* v. *SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). The fifth element is dispositive in this case—there is no dispute that Malin received 12 full weeks of FMLA leave. As Malin concedes, she began her FMLA leave on June 19, 2006, and returned to work on September 11, 2006, exactly 12 weeks later.

Although Malin concedes that she received 12 full weeks of FMLA leave, she argues that Hospira and Rodriguez attempted to discourage her from taking the maximum amount of leave. She claims that this falls squarely within the definition of interference, as 29 C.F.R. § 825.220 sets forth that "'interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." But even crediting Malin's testimony that she was discouraged from using the full amount of FMLA leave, this would not save Malin's FMLA interference claim for Malin must establish not only interference but also that she was prejudiced by that interference. *See Ragsdale* v. *Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155, 152 L. Ed. 2d 167 (2002) (even if one proves interference under § 2615, § 2617 provides no relief unless the employee has been prejudiced by the violation . . . ."); *Franzen* v. *Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008) ("[S]ection 2617 provides no relief unless the plaintiff can prove that he was prejudiced by the violation."). This she cannot do, as she received the maximum 12 weeks of leave provided by the FMLA. *See Rasic* v. *City of Northlake*, No. 08 C 104, 2009 WL 3150428, at *10-11 (N.D. Ill. Sept. 25, 2009) (attempted interference claim based on being "deprived of 'the benefit of taking FMLA leave without being discouraged from doing so'" is not cognizable

7

under the FMLA).  Summary judgment will be granted in favor of Hospira and Rodriguez on

Malin's FMLA interference claim.

## II.     FMLA Retaliation

The FMLA also prohibits an employer from retaliating against an employee for

exercising her FMLA rights.  29 U.S.C. § 2615(a)(2).  "In other words, the employer cannot use

an employee's use of FMLA leave as a negative factor in promotion, termination, and other

employment decisions."  *James* v. *Hyatt Regency Chicago*, 707 F.3d 775, 781 (7th Cir. 2013).

FMLA retaliation can be proved either directly or indirectly.  *Id.*  Malin failed to present any

argument under the indirect method, and thus the court will only consider the direct method here.

Under the direct method, Malin must establish: (1) a statutorily protected activity; (2) a

materially adverse action taken by defendants; and (3) a causal connection between the two.

*Ames* v. *Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011).

The first two elements are easily met.  Malin engaged in statutorily protected activity

when she took her 12 weeks of FMLA leave from June 19, 2006 through September 11, 2006.

The parties also do not dispute that, after Malin began her FMLA leave, Hospira did not promote

Malin (1) as part of the IT department reorganization announced on July 12, 2006; or (2) in July

2007, when Hospira hired Monga for the "open box" position.  Failure to promote is a materially

adverse employment action.  29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of

FMLA leave as a negative factor in employment actions, such as hiring, promotions or

disciplinary actions . . . ."); *Stephens* v. *Erickson*, 569 F.3d 779, 787 (7th Cir. 2009) ("[T]he

retaliatory denial of a promotion is a materially adverse action.").[10]

---

[10] In their reply, defendants argue that failure to promote can only qualify as an adverse action if a
plaintiff shows that she "properly applied for the position." (Dkt. 110 at 4-5 (quoting *Hill* v. *Potter*,
625 F.3d 998, 1003 (7th Cir. 2010)).)  For this reason, defendants contend that Malin suffered no adverse
action in connection with the July 2006 reorganization, as she did not apply for a position at that time.  In
(continued...)

What remains is the third element—whether a causal connection exists between Malin's FMLA leave and these failures to promote. The required causal connection may be shown through either direct evidence (*i.e.,* a smoking gun admission by defendants that they failed to promote Malin because she took FMLA leave) or through "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Silverman* v. *Bd. of Educ. of the City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011) (citations omitted). "The convincing mosaic of circumstantial evidence may include suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the [failure to promote]." *Pagel* v. *TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). Because Malin has no direct evidence of unlawful retaliation, she relies on the latter approach, pointing to the allegedly suspicious timing between her request for FMLA leave and the July 12, 2006 reorganization announcement in addition to allegedly inconsistent explanations regarding why Malin did not receive any promotions that she claims amount to pretext.

Suspicious timing alone cannot establish the required causal connection, as "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." *O'Leary* v. *Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). But Malin nonetheless cites *Loudermilk* v. *Best Pallet Co.*, 636 F.3d 312 (7th Cir. 2011), for the proposition that timing alone can be sufficient to infer causation.

---

(...continued)

*Hill*, the plaintiff, unlike her fellow employees who received promotions, did not apply in writing for the position at issue as required by her employer's policy. 625 F.3d at 1004. Unlike *Hill*, as defendants themselves emphasize, no Hospira employee was required to apply for positions in the 2006 reorganization. Thus, *Hill* is inapposite, and the court finds that the failure to promote Malin in the July 2006 reorganization qualifies as an adverse employment action.

But *Loudermilk* is the exception that proves the rule. In *Loudermilk*, the timing was so transparent that it nearly provided direct evidence of discriminatory intent: "When Loudermilk reiterated his concerns about being treated differently from the Hispanic workers, Lyons told him: 'Put it in writing.' Loudermilk did just that and handed Lyons a note the next day. Lyons fired him on the spot." *Id.* at 314. In those circumstances, a jury could clearly find that the complaint and the firing were related. But the Seventh Circuit reaffirmed the general rule that "[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Id.* at 315.

The timing here is not sufficient, nor has Malin presented other circumstantial evidence to permit an inference that a causal connection existed with respect to the July 2006 reorganization. The reorganization, announced on July 12, 2006, was an ongoing process, set in motion well before Malin requested FMLA leave. Although Anderson asked Bochek in a June 22, 2006 email whether Malin's FMLA leave "impacts [his] reorganization plans or if [he] need[s] to do anything different in terms of documentation etc." (Dkt. 107 at PA 23), this email—written in response to a notification that Malin was taking FMLA leave—does not suggest discriminatory intent. If anything, it demonstrates that the decision not to promote Malin during the reorganization was made prior to Anderson's learning that Malin was taking FMLA leave. Additional contemporaneous documentation is in accord, reflecting that Malin was ruled out for a grade 20 position by June 15, 2006, several days before she requested FMLA leave.

Malin has also failed to create a genuine issue to suggest a connection between her FMLA leave and Hospira's failure to promote her in July 2007 to the "open box" position instead filled by Monga. The timing is far from suspicious, as the hiring occurred over a year

after Malin's request for FMLA leave. And the circumstantial evidence Malin points to—"fishy" circumstances surrounding Monga's hiring and the allegedly baseless evaluation by her superiors that she was not ready for the job—does not suggest that the decision to hire Monga instead of promoting Malin was connected to her FMLA claim or even that her FMLA leave was taken into account. But the court does not sit as a "super personnel department that second-guesses employer's business judgments." *Millbrook* v. *IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (citation omitted) (internal quotation marks omitted)). Malin only presents her own self-serving speculation and assessment that she was more qualified than Monga for the "open box" position and that she had been performing the job's duties for approximately a year.[11] Without any objective support for her speculation that her employer's reasons for hiring Monga were pretextual, however, Malin's speculation does not suffice to establish an inference of retaliation. *See Stephens*, 569 F.3d at 788 ("[T]o create an inference of retaliation based upon a difference in credentials, [plaintiff] must offer more than mere self-serving appraisals, or his own subjective belief he was as qualified as the successful applicant." (citations omitted) (internal quotation marks omitted)).

Malin's case is distinguishable from the cases she cites in support of her claim. In *Haschman* v. *Time Warner Entertainment Co.*, 151 F.3d 591, 604 (7th Cir. 1998), the court declined to overturn a jury verdict for the plaintiff where her employer fired her days after she requested FMLA leave and failed to inquire about her prognosis or probable leave time, as it was required to do by law. In *Schmutte* v. *Resort Condominiums International, LLC*, 463 F. Supp. 2d 891, 914–15 (S.D. Ind. 2006), the district court denied the employer's motion for summary

---

[11] Although Anderson did compliment Malin on the work she was doing when she returned from her FMLA leave, Malin has not cited to any evidence in the record that would demonstrate that Anderson or others considered Malin to be performing the responsibilities of the "open box" position at the time it was posted.

judgment where the plaintiff had an extensive history of FMLA leave and there was evidence that her employer fired her to avoid future FMLA leave issues. When the plaintiff was fired, she had been back at work for ten weeks since her last FMLA leave, another FMLA leave request had been recently denied by her employer, and her employer fired her based in part on missed days during that timeframe that were also eligible for FMLA leave. *Id.* In *Johnson* v. *City of Marseilles*, No. 06 CV 0955, 2008 WL 94803, at *7 (N.D. Ill. Jan. 8, 2008), the plaintiff alleged that less than a month after she last complained of sexual harassment, her employer retaliated by assigning her to work alone on the night shift with the very co-worker she had complained about. And in *Rodriguez ex rel. Fogel* v. *City of Chicago*, No. 08 CV 4710, 2011 WL 1103864, at *12–13 (N.D. Ill. Mar. 25, 2011), the decisionmaker testified that he terminated the plaintiff because she was "frequently absent from work" and "calling in sick." The specific nature of the alleged retaliation in these cases created an inference of causation; that connection is lacking here. Malin's failure to create a genuine issue of material fact to connect her FMLA leave and her failure to be promoted in July 2006 or August 2007 warrants granting defendants' motion for summary judgment on Malin's FMLA retaliation claim.

## III. Title VII Retaliation[12]

### A. Scope of the Retaliation Claims Under Consideration

The parties initially dispute the proper scope of Malin's Title VII retaliation claim. Malin contends that her July 2003 internal complaint of sexual harassment while employed by Abbott affected her opportunities for advancement up to and including the July 2007 decision to hire Monga instead of her for the "open box" position. Hospira argues that her Title VII retaliation claim is limited to the July 2007 failure to promote and that any other purported failure to promote is beyond the scope of Malin's EEOC charge as well as time-barred.

---

[12] Malin does not contest that her Title VII retaliation claim is directed only against Hospira.

"A Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon* v. *S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie* v. *Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)).  Malin's September 11, 2007 charge, drafted by the EEOC,[13] alleges:

> I began my employment at [Hospira] on April 22, 1996.  My current position is Relationship Manager Quality.  In or around July 2003, I complained of sexual harassment.  On August 15, 2007, I was denied a promotion to the position of Manager IT Quality.

(Dkt. 84 at 7.)  The attachment to her EEOC intake questionnaire, completed weeks before the EEOC charge was filed, lists several other alleged promotions and grade increases she allegedly failed to receive, including in April 2002, July 2003, and July 2004.

The Seventh Circuit has "sent somewhat mixed signals as to whether and in what circumstances an assertion contained in an EEOC questionnaire may be considered as part of the charges filed with the EEOC for purposes of determining whether the allegation can be pursued in federal court." *Brindley* v. *Target Corp.*, 761 F. Supp. 2d 801, 806 (N.D. Ill. 2001) (comparing the "bright-line" result that only allegations in the charge can be considered in *Novitsky* v. *American Consulting Engineers, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999), with *Vela* v. *Village of Sauk Village*, 218 F. 3d 661, 664 (7th Cir. 2000), where the Seventh Circuit found that certain circumstances warrant looking beyond the four corners of the charge while citing *Novitsky* approvingly).  Although the charge rather than the questionnaire is generally decisive, *Novitsky*, 196 F.3d at 702, exceptions may be made for allegations outside the body of

---

[13] Although Malin repeatedly states that the EEOC drafted the charge, she has not pointed the court to any testimony or other evidence to support the assertion.  Defendants do not contest this for summary judgment purposes, and thus the court will assume that someone at the EEOC did in fact draft the charge for the purpose of this opinion.

the charge "when it is clear that the charging party intended the agency to investigate the allegations," *Vela*, 218 F.3d at 664. Equitable exceptions have generally been applied where (1) the plaintiff was not represented by a lawyer at the EEOC charge stage, (2) there is evidence that the EEOC engaged in inequitable conduct, (3) the questionnaire was filed at the same time as the charge, or (4) the questionnaire was signed under oath. *See Brindley*, 761 F. Supp. 2d at 806 n.6. These considerations must also be balanced against whether the employer had notice of the additional claims of retaliation. *Fantozzi* v. *Winston & Strawn LLP*, No. 11 C 392, 2011 WL 3704930, at *5 (N.D. Ill. Aug. 17, 2011).

None of the equitable considerations is present here. Although Malin did not consult with an employment attorney, her brother, a patent attorney, reviewed the charge before Malin signed it. There is no evidence that the EEOC somehow misled Malin. Nor was the questionnaire filed at the same time as the charge or signed under oath. There also is no evidence that Hospira had notice that Malin was contending that her failure to move up in position or grade level pre-2007 was in retaliation for her 2003 internal complaint; Malin's response to Hospira's position statement to the EEOC only addresses the 2007 incident, suggesting that Hospira viewed the charge narrowly. Thus, Malin's Title VII retaliation claim is limited to the 2007 failure to promote, the only instance of retaliation identified in her EEOC charge. *See Knowles* v. *Trans Union LLC*, No. 03 C 4952, 2005 WL 20376, at *3-5 (N.D. Ill. Jan. 4, 2005) (concluding that no equitable considerations warranted considering allegations made in the intake questionnaire but not the EEOC charge).

Moreover, even if the additional claims alleged in Malin's intake questionnaire were encompassed in the EEOC charge, they are time-barred. Malin filed her charge in September 2007. Only the July 2007 incident occurred within 300 days of the filing of Malin's EEOC

charge.  The remainder fall outside the statutory time period for filing charges set forth in 42

U.S.C. § 2000e-5(e).  Although Malin attempts to rely on a continuing violation theory to avoid

the time-bar, the failure to promote is a discrete act and cannot form the basis for a continuing

violation.  *See Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 153

L. Ed. 2d 106 (2002).  Nor can Malin claim that all instances of alleged retaliation be aggregated

into a single unlawful practice accruing in July 2007.  *See id.* at 111.  Thus, Malin's Title VII

retaliation claim is limited to the July 2007 failure to promote.[14]

### B.     Merits of Malin's Title VII Retaliation Claim

Like the FMLA, Title VII prohibits an employer from retaliating against an employee

who has opposed an unlawful employment practice, in this case sexual harassment.  42 U.S.C.

§ 2000e-3(a).  Again, although Malin could proceed under either the direct or indirect method,

she only seeks to rely on the direct method.  The inquiry is essentially the same as for Malin's

FMLA retaliation claim, except the protected activity is not the taking of FMLA leave but rather

Malin's complaints regarding alleged sexual harassment in 2003.  *See Nichols* v. *S. Illinois*

*Univ.-Edwardsville*, 510 F.3d 772, 784-85 (7th Cir. 2007).

Malin belatedly attempts to argue that her January 2006 statement to Anderson that she

believed she was being held back because of a prior report of an incident to human resources

also constitutes protected activity.  But this vague reference to retaliation (without more to allow

Anderson to understand it to be a complaint related to sexual harassment) does not constitute

protected activity.  *See Northington* v. *H & M Int'l*, 712 F.3d 1062 (7th Cir. 2013) ("Vague and

obscure 'complaints' do not constitute protected activity."); *Andonissamy* v. *Hewlett-Packard*

*Co.*, 547 F.3d 841, 851 (7th Cir. 2008) ("While a report of discrimination to a supervisor may be

---

[14] Malin may, however, refer to discrete allegedly retaliatory acts that occurred outside the statutory time period as background evidence in support of her timely retaliation claim.  *See Morgan*, 536 U.S. at 113.

statutorily protected activity under Title VII, the report must include a complaint of [actionable] discrimination or sufficient facts to raise that inference."). Thus, Malin can only claim that she was retaliated against for making her 2003 complaint.

Malin relies on the same circumstantial evidence she contends supports her FMLA retaliation claim to establish a causal connection without setting forth why those circumstances suggest that being passed over for the "open box" position was in any way connected to her 2003 complaint or her supervisors' knowledge of it. Anderson's knowledge of any complaint was limited to what Malin told him in January 2006, which is not enough to suggest that he was acting with a retaliatory motive. And while Carlin was involved in the hiring process, his alleged 2003 comments that Malin should not make a report to human resources are too attenuated in time to suggest retaliation four years later. Nor does his role in interviewing and recommending Monga for a position at Hospira support the needed causal connection. Considering this alleged circumstantial evidence in light of the four-year gap between Malin's complaint (while still at Abbott) and the 2007 decision further demonstrates that Malin has failed to present sufficient evidence to proceed on her Title VII retaliation claim. *See, e.g.*, *Mykleburst* v. *Med. College of Wis.*, 97 F. App'x 652, 655-56 (7th Cir. 2004) (three-year gap between protected activity and firing, coupled with an intervening promotion, was too attenuated to show causation); *Oest* v. *Ill. Dep't of Corr.*, 240 F.3d 605, 611 (7th Cir. 2001) ("[I]f the remarks are not contemporaneous with the discharge or causally related to the discharge decision making process they are insufficient to create a triable issue of material fact regarding discrimination."). Thus, Hospira's motion for summary judgment on Malin's Title VII retaliation claim will be granted.

16

## CONCLUSION

For the foregoing reasons, defendants' motion [#81] is granted.  This case is terminated.

**ENTER:**

Dated: May 31, 2013

_____
JOAN HUMPHREY LEFKOW
United States District Judge